IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PALMETTO CIVIL GROUP LLC and<br>JOSEPH H. JEFFERSON III,<br><br>Plaintiffs,<br><br>vs.<br><br>H.G. REYNOLDS COMPANY, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:18-cv-02572-DCN<br><br>**ORDER** |

The following matter is before the court on defendant H.G. Reynolds Company, Inc.'s ("Reynolds") motion to dismiss, ECF No. 4. For the reasons set forth below, the court grants the motion to dismiss with respect to the § 1981 claim and remands the remaining claims to state court.

## I. BACKGROUND

Plaintiff Palmetto Civil Group LLC ("Palmetto") is a contractor, and plaintiff Joseph H. Jefferson III ("Jefferson") is the president and owner of Palmetto (collectively, "plaintiffs"). Jefferson is African-American, making Palmetto a minority-owned business. Reynolds is a construction company. Plaintiffs allege that in early 2013, Reynolds and Palmetto formed "an informal joint venture, teaming, and partnership agreement" to pursue construction contracts together. ECF No. 1-1 at 4. Plaintiffs contend that Reynolds and Palmetto agreed to share confidential business information, help each other pursue construction projects, work exclusively with each other on certain construction projects, and assume to each other the duties of good faith, fair dealing, honesty, confidentiality, and loyalty. Plaintiffs allege that Reynolds specifically

1

promised plaintiffs that each member of this joint venture "would be afforded a meaningful opportunity to perform and undertake a significant and meaningful task or commercially useful function, portion or scope of work" for any construction projects they pursued. The parties also generally agreed that Palmetto would be responsible for 10–15% of the project work, and Reynolds would perform 85–90% of the work, with each receiving a fair share of the profits.

In 2013, Berkeley County School District ("BCSD") issued a Request for Qualifications and Proposals, seeking proposals from contractors on various projects, including the construction of two elementary schools. Plaintiffs allege that Reynolds invited plaintiffs to work together to submit a proposal for one of the schools. Plaintiffs contributed to preparing the proposal, and they allege that Reynolds represented that plaintiffs would fully participate in the project if it was awarded. The proposal listed Jefferson as the "SWMBE/Local Coordinator" and further identified Jefferson as "a Certified DBE."[1] This is relevant because South Carolina public policy favors minority businesses. See S.C. Code. Ann. § 11-35-5210(1). Plaintiffs also participated in the interview process, and Jefferson personally gave part of the proposal presentation to BCSD. Reynolds was then awarded the construction project of Bowen's Corner Elementary ("the Project").

For funding reasons unrelated to the parties, the Project did not begin until 2017. Plaintiffs continued to believe that they would be working on the Project, as allegedly promised by Reynolds, but in 2017, Reynolds engaged a nonminority subcontractor to

---

[1] "SWMBE" stands for Small/Woman/Minority Business Enterprise, and "DBE" stands for Disadvantaged Business Enterprise.

complete the work instead of plaintiffs. Plaintiffs allege that to gain business, Reynolds used plaintiffs for Jefferson's racial minority status and Palmetto's minority or disadvantaged business status. Plaintiffs contend that race was a motivating factor in Reynolds's decision to fail to retain or hire plaintiffs for the Project, Reynolds misled plaintiffs about their involvement in the Project, and Reynolds wrongfully terminated plaintiffs from their involvement in the Project.

Plaintiffs filed their suit on August 7, 2018 in the Court of Common Pleas for the County of Berkeley, South Carolina. Their complaint alleges causes of action for (1) racial discrimination under 42 U.S.C. § 1981; (2) promissory estoppel; (3) quantum meruit; (4) unfair trade practices; (5) breach of fiduciary duty; (6) breach of implied covenants of good faith and fair dealing; (7) negligent misrepresentation; and (8) constructive fraud. Reynolds removed the case to federal court on September 18, 2018 pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. Reynolds contends that the court has federal question jurisdiction over plaintiffs' § 1981 claim and supplemental jurisdiction over the remaining claims. Reynolds filed its motion to dismiss on September 25, 2018. ECF No. 4. Plaintiffs responded on October 9, 2018, ECF No. 6, and Reynolds replied on October 16, 2018, ECF No. 7. The court held a hearing on the motion on Friday, December 7, 2018. The motion is now ripe for review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . .

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Although Reynolds asserts several arguments in its motion to dismiss, the court focuses on the § 1981 claim, as the dismissal of this claim would require the court to remand plaintiffs' remaining claims to state court. As such, the court will first address whether plaintiffs have sufficiently pleaded an action under § 1981. The court finds that plaintiffs have not, warranting dismissal of the claim and a remand of the remaining state-law claims.

Plaintiffs first allege that "Reynolds failed to enter into a binding subcontract and/or binding joint venture agreement with [plaintiffs] or allow [plaintiffs] the opportunity to meaningfully participate in the Project in violation of 42 U.S.C. § 1981." ECF No. 1-1 at 11. Reynolds's argument for dismissal of the § 1981 claim is two-fold. First, Reynolds argues that plaintiffs "fail to provide any evidence that [Reynolds's] hiring of another contractor was racially motivated." ECF No. 4-1 at 6. Then Reynolds contends that Jefferson individually has no standing to assert a claim under § 1981 because if Reynolds were to contract to do work on the Project, it would contract with Palmetto as a business, not Jefferson as an individual. Plaintiffs respond that the fact that Reynolds hired another contractor instead of plaintiffs provides sufficient circumstantial evidence of discrimination to survive a motion to dismiss. Plaintiffs also argue that Jefferson has standing because he is the sole owner and president of Palmetto, and as such he suffered just as much injury as Palmetto.[2]

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." The Supreme Court has interpreted this statute to "prohibit[] racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). Section 1981(b) defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Because § 1981 applies to the making of

---

[2] Because the court dismisses the § 1981 claim for failure to state a claim, it does not address whether Jefferson has standing to bring a § 1981 claim.

contracts, the Supreme Court has held that "a contractual relationship need not already exist" because the statutes protects the "would-be contractor." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006).

To survive a motion to dismiss a race discrimination claim, a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss." Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017). Instead, under the pleading standard announced in Twombly and Iqbal, a plaintiff must allege facts "to support a plausible claim" so that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 647 (citations omitted). The Fourth Circuit has recently applied this pleading standard in McCleary-Evans v. Md. Dep't of Transp., where the court held that the plaintiff, an African-American woman, did not allege sufficient facts to show that the defendant failed to hire her "under circumstances giving rise to an inference of unlawful discrimination." 780 F.3d 582, 583–84, 588 (4th Cir. 2015). The plaintiff's complaint alleged that the people who made hiring decisions were either male or not African-American, and the African-American candidates were overlooked so that white male and female candidates would be selected for the job. Id. at 583–84. The complaint did not contain any allegations about the qualifications of the people who were hired. Id. at 584. The Fourth Circuit explained that "[o]nly speculation can fill the gaps in her complaint—speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her" and found that while these allegations are "consistent with discrimination," they "do[] not alone support a reasonable inference that the decisionmakers were motivated by bias." Id. at 586. The Fourth Circuit concluded that "the consequence of allowing [the plaintiff's] claim to

proceed on her complaint as stated would be that any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion." Id. at 588. Because this does not comply with the pleading standards under Supreme Court precedent, the Fourth Circuit held that "the complaint failed to state a plausible claim for relief." Id.

In contrast, the Fourth Circuit held in Woods v. City of Greensboro that the plaintiffs did plead sufficient facts to support a plausible discrimination claim under § 1981. 855 F.3d 639, 652 (4th Cir. 2017). In Woods, the plaintiffs, a minority-owned business and its owners, alleged that the city of Greensboro ("the City") discriminated against them because of their race when the City failed to modify a resolution that authorized the City to enter into a loan agreement with the plaintiffs. Id. at 644. The effect of this failure was the City's refusal to give the plaintiffs a loan under which the City would take a third-position lien. Id. However, unlike the plaintiff in McCleary-Evans, the plaintiffs in Woods "pleaded allegations beyond a 'sheer possibility that a defendant has acted unlawfully.'" Id. at 648 (quoting Iqbal, 556 U.S. at 768). Their allegations included: (1) a study showing the City's pattern of lending almost exclusively to nonminority-owned businesses; (2) facts that suggested the plaintiffs "had sufficient equity to fully secure a third-position lien"; and (3) examples of the City's differential treatment of nonminority-owned businesses, specifically including an example of the City approving a loan for a nonminority-owned business and taking a third-position lien, which was the conduct at issue in the case. Id. The Fourth Circuit held that with these alleged facts, the plaintiffs "pleaded sufficient facts to justify an inference, plausibly and

reasonably indulged, that the City treated [them] differently from the way it has treated nonminority businesses under arguably similar circumstances, and that it did so on account of race." Id. at 651.

To prove a discrimination case under § 1981, "a plaintiff must demonstrate (1) that he is a member of a racial minority, (2) that defendants had the intent to discriminate against him on the basis of his race, and (3) that the defendants' discrimination concerned one of the statute's enumerated activities." Pena v. Porter, 316 Fed. App'x 303, 316 (4th Cir. 2009) (citing Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000)); see also Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b).").[3] Therefore under the pleading standards discussed above, in order for plaintiffs' complaint to survive the motion to

---

[3] The court notes that plaintiffs identify the elements of a § 1981 claim as articulated in Patterson v. McLean Credit Union, 491 U.S. 164, 186–87 (1989). In Patterson, the Supreme Court explained that to prove her § 1981 claim, the plaintiff needed to prove that "she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee." Id. However, the plaintiff's § 1981 claim related to the defendant's adverse employment actions against the plaintiff. Id. at 169. As such, the elements are tailored to employment actions. In cases in which a § 1981 claim is asserted for general contract discrimination, not employment discrimination, courts use the more general elements identified above. See Hill v. John Foster Homes, Inc., 2010 WL 2696655, at *3 (E.D. Va. July 7, 2010) ("To succeed on a claim under either § 1981 or 1982, a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest or legitimate property right." (citing Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006); Mobley v. Rossell, 297 F. Supp. 2d 835, 840 (D. Md. 2003))); Lanier v. Weaver Cooke Const., LLC, 2006 WL 13197, at *1 (M.D.N.C. Jan. 3, 2006) ("To state a claim under § 1981, the plaintiff must show (1) he belongs to a racial minority, (2) the defendant intentionally discriminated against him because of his race, and (3) the discrimination was in reference to an activity protected by § 1981." (citing Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 2000))).

dismiss, they must plead facts that make it plausible that Reynolds intentionally discriminated against them on the basis of race when it failed to enter a contract with plaintiffs and instead chose to contract with a nonminority subcontractor.

Plaintiffs argue the fact that Reynolds engaged a nonminority subcontractor instead of plaintiffs is sufficient at this stage of litigation to allege that Reynolds intentionally discriminated against plaintiffs on the basis of race. The court disagrees. Similar to the plaintiff in McCleary-Evans, the plaintiffs here allege that they are minorities, and instead of entering into a contract with them, Reynolds entered into the contract with a nonminority subcontractor. As a result, the plaintiffs allege that Reynolds "failed to retain or hire [plaintiffs] and race was a motivating factor in Reynolds's decision." ECF No. 1-1 at 9. This alone is not sufficient to state a claim of discrimination, as it is the exact situation of which the Fourth Circuit warned: a "qualified member of a protected class who alleges nothing more than she was denied a position . . . in favor of someone outside her protected class." McCleary-Evans, 780 F.3d at 588. Unlike the plaintiffs in Woods, plaintiffs did not allege facts to show that Reynolds has a pattern of discrimination or to provide examples of Reynolds treating minority subcontractors differently from nonminority subcontractors. Instead, plaintiffs simply allege that Reynolds "engaged in a pattern of illicit and reprehensible racial discrimination for the purpose of private financial gain and greed" and "terminated Jefferson's involvement and participation in the Project for illegal and illicit racially motivated purposes." ECF No. 1-1 at 10. These are simply "conclusory statements" that are not sufficient to state a claim for which relief may be granted. See Iqbal, 556 U.S. at 678.

The court acknowledges the alleged role race plays in this dispute. Namely, plaintiffs allege that Reynolds used them for their minority status to win a bid, and once Reynolds won the bid, Reynolds decided to no longer work with plaintiffs. In other words, plaintiffs allege that Reynolds used them in the proposal process because of race. However, there are not sufficient allegations to show that Reynolds <u>failed to form a contract</u> with plaintiffs, as required by a § 1981 claim, specifically <u>because of</u> plaintiffs' race. Therefore, the court grants Reynolds's motion to dismiss with regard to the § 1981 claim.

Having dismissed the only federal claim in this action, the court must now decide whether to retain its supplemental jurisdiction over the remaining state-law claims or to remand them to state court. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). When a district court does so, it may remand the remaining pendent state-law claims to state court. <u>Farlow v. Wachovia Bank of N. Carolina, N.A.</u>, 259 F.3d 309, 316–17 (4th Cir. 2001); <u>see also</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because plaintiffs did not sufficiently plead a § 1981 claim, the court remands the remaining state-law claims to state court.

## IV. CONCLUSION

For the reasons set forth above, the court grants the motion to dismiss with respect to the § 1981 claim and remands the remaining claims to state court.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 16, 2019
Charleston, South Carolina**